# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN ROHRBAUGH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No. |
| ) | |
| TRANSAM TRUCKING, ) | |
| INCORPORATED ) | |
| ) | |
| Defendant. ) | |
| ) | |

_____

## COMPLAINT AND DEMAND FOR JURY TRIAL

John Rohrbaugh (hereinafter, "Plaintiff") moves the Court for entry of judgment in his favor against the named Defendants and in support of such Complaint avers as follows:

### PARTIES, JURISDICTION AND VENUE

1. This Honorable Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 because Plaintiff's claims arise under federal law, including 42 U.S.C. §1981 and Title VII of the Civil Rights Act of 1964.

2. Additionally, upon information and belief, Plaintiff was hired while residing in York, Pennsylvania, and received all onboarding, hiring communications, and termination documentation at his residence in York, Pennsylvania.

3. These employment-related contacts occurred within the Middle District of Pennsylvania and constitute substantial events giving rise to these claims. As such, Defendant transmitted employment materials, including hiring confirmation, contractual onboarding information, and termination notices, directly into this District, thereby further satisfying the requirements of 28 U.S.C. §1391(b)(2) as significant acts and omissions underlying this case occurred in this forum

4. The Plaintiff alleges that Defendant, TransAM Trucking, Inc., has engaged in intentional discrimination on the basis of race against the Plaintiff as alleged below in this Complaint. Moreover, this Honorable Court has jurisdiction over Plaintiff's state law claims to the extent he pleads them as per 28 U.S.C. §1367.

5. Venue lies within the Middle District of Pennsylvania pursuant to 28 U.S.C. §1391(b) (2) as the facts and occurrences, acts and/or omissions, and incidents and/or actions alleged herein took place within this judicial district.

6. Plaintiff brings this action against his former employer, TransAM Trucking, Inc., (hereinafter "TransAM" or "Defendant"). TransAM is located at 15910 S US 169 Hwy, Olathe, KS 66062.

7. Defendant conducts business in Pennsylvania through interstate trucking operations and employs drivers throughout the Commonwealth.

8. Plaintiff is an adult male who, at all relevant times hereto, resides in the Commonwealth of Pennsylvania, York County, and was employed by Defendant.

## UNDERLYING FACTS

9. Plaintiff, a Caucasian male, was hired as a truck driver trainee by Defendant while living in York, Pennsylvania. He received all recruitment communications, hiring confirmation, and onboarding materials at his residence in York. His employment was to involve work in Pennsylvania and surrounding states.

10. After accepting the trucking position, Plaintiff was instructed to travel to Tampa, Florida for orientation.

11. During orientation, Plaintiff was singled out for a drug test, while employees of color were not required to test. This differential treatment constitutes direct evidence of race discrimination.

12. Plaintiff submitted a urine specimen. When Plaintiff exited the restroom, the designated collector, Tucker Graham, was not present. Graham returned minutes later and falsely claimed the temperature was "too low," despite federal guidelines allowing 90–100 degrees and Plaintiff's sample reading 92 degrees.

13. Graham mishandled the specimen by transferring it repeatedly between collection cups, which artificially cooled it, and then falsely certified that it was sealed within four minutes.

14. Defendant forced Plaintiff to undergo a second "monitored" test. Graham entered the stall, required Plaintiff to expose his genitals, and watched the urine exit

Plaintiff's body and enter the cup—conduct that was humiliating, sexually invasive, inconsistent with DOT protocol, and not required of others.

15. Despite direct visual confirmation of urine flowing from Plaintiff's penis, Defendant later falsely claimed the sample was "not human urine," an impossibility.

16. Defendant's internal documents conflict: one claims Plaintiff refused the test; another claims he tested positive. These contradictions demonstrate fabrication, pretext, and discriminatory intent. See **Exhibit A**.

17. Defendant then reported Plaintiff as a drug-test violator to Federal Motor Carrier Safety Administration ("FMCSA") which suspended Plaintiff's CDL and destroyed his ability to work creating substantial loss of income and benefits.

18. Plaintiff was terminated immediately, forced to leave orientation without transportation or financial assistance, and suffered reputational harm, emotional distress, and lost wages ranging at an anticipated range of over $5,000 per week.

19. Defendant's proffered justification — that Plaintiff "faked" a monitored urine test — is both illogical and pretextual, intended to conceal racial discrimination, sexual harassment, and retaliation.

20. On April 19, 2024, the Plaintiff filed his claims at the Equal Employment Opportunity Commission which were also joint filed at the Pennsylvania Human Relations Commission under docket number 530-2024-05278. The Plaintiff's

federal and state claims were fully exhausted, and the Plaintiff received his right to sue letter on August 28, 2025. See attached as **Exhibit B**.

21. Defendant is responsible/liable for the actions of its agents under a theory of *Respondeat Superior*.

## COUNT 1
## VIOLATION OF 42 U.S.C. §1981

22. Plaintiff incorporates by reference all prior paragraphs as if fully set forth herein.

23. Defendant, through its agents, intentionally discriminated against Plaintiff on the basis of his race (Caucasian) in the making, performance, and termination of his employment contract, as well as the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

24. Plaintiff was recruited, hired, and provided employment documentation at his home in York, Pennsylvania, establishing the making of an employment contract within this District.

25. Plaintiff was singled out for drug testing based on his race, despite similarly situated non-Caucasian trainees not being required to test.

26. Defendant interfered with both the formation and enforcement of Plaintiff's employment contract by initiating discriminatory testing, mishandling his specimen, fabricating testing results, and later terminating him based on racially motivated and pretextual grounds.

27. Defendant further impaired Plaintiff's contractual rights by falsely reporting him to FMCSA, preventing him from obtaining subsequent employment in the trucking industry and causing his reputation to be tarnished.

28. As a direct and proximate result of Defendant's violation of 42 U.S.C. §1981, Plaintiff has suffered lost wages, emotional distress, humiliation, damage to his reputation, and loss of career opportunities.

29. Plaintiff seeks compensatory damages including but not limited to lost wages and benefits, pain and suffering, punitive damages, attorney's fees, and all other relief as provided by law.

## COUNT 2
## VIOLATION OF TITLE VII/PHRA
## RACE DISCRIMINATION

30. Plaintiff hereby repeats all preceding paragraphs as though fully set forth.

31. Plaintiff suffered an adverse employment action when he was terminated immediately after challenging the discriminatory handling of his drug test.

32. The differential treatment in drug testing provides direct evidence of disparate treatment based on race. Employees of color were not subjected to the same requirements, demonstrating that race was a motivating factor in Defendant's decision-making.

33. Defendant's conflicting records and fabricated drug-test explanation establish pretext, as both documents state different reasons for the termination.

34. Plaintiff seeks all appropriate relief as specified more fully below.

## COUNT 3
## TITLE VII/PHRA
## SEX BASED DISCRIMINATION AND HARASSMENT

35. Plaintiff incorporates all forgoing paragraphs as though fully set forth.

36. Plaintiff was compelled to expose his genitals during a monitored drug test in a manner inconsistent with standard DOT protocol.

37. The conduct was severe, invasive, and humiliating, altering the conditions of Plaintiff's training environment. The actions were not job-related nor consistent with legitimate testing procedures, thereby supporting the existence of a hostile environment based on sex.

38. Defendant's justification for the invasive monitoring was pretextual and not rooted in legitimate testing requirements. Defendant subjected Plaintiff to hostile and discriminatory treatment based on sex.

39. Defendant's actions constitute unlawful retaliation under Title VII, and the PHRA Plaintiff seeks all appropriate relief as specified more fully below.

## COUNT 4
## VIOLATION OF TITLE VII/PHRA
## RETALIATION

40. Plaintiff hereby repeats all preceding paragraphs as though fully set forth.

41. Plaintiff engaged in protected activity by objecting to racial discrimination, sample mishandling, and sexually invasive procedures.

42. Plaintiff communicated his objections to management.

43. Immediately after voicing concerns, Defendant terminated Plaintiff.

44. Defendant further retaliated by reporting Plaintiff as a drug-test violator to FMCSA, destroying his ability to work.

45. The timing and escalation of Defendant's conduct demonstrate retaliatory intent.

46. Defendant's actions constitute unlawful retaliation under Title VII, and the PHRA. Plaintiff seeks all appropriate relief as specified more fully below.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff prays that the Court grant relief on his Causes of Action as specified below.

47. The Plaintiff prays that the Court award monetary relief as follows:

48. On his Causes of Action, order Defendants to pay equitable monetary relief and compensatory damages to the Plaintiff as are asserted under Section 1981, Title VII and/or PHRA, where and as applicable, and in an amount proven at trial.

49. The Plaintiff prays that the Court award him costs, expenses, and attorneys' fees, payable by Defendants where and as applicable, by determining that the Plaintiff is a prevailing party on his Causes of Action and thereupon awarding the Plaintiff his reasonable costs, expenses, and attorneys' fees incurred in bringing this action under applicable statutory language.

50. Injunctive relief requiring correction of FMCSA records so the Plaintiff can return to work in trucking.

51. Further, the Plaintiff prays that the Court award monetary relief as follows:

52. The Plaintiff prays that the Court order to pay pre- and post-judgment interest in all monetary amounts awarded in this action, as provided by law.

53. The Plaintiff prays that the Court retain jurisdiction of this case for a sufficient period to assure that the Defendants have fully complied with the remedies to the greatest extent practicable.

54. The Plaintiff prays that the Court award all appropriate pain, suffering, humiliation, and punitive damages as applicable under his respective causes of action where and as applicable to the named Defendant.

55. The Plaintiff prays that the Court award such other and further relief as this Court deems equitable and just.

Dated: 11/21/2025                                    Respectfully submitted,

**DONHAM LAW**

*By: /s/ Jeremy A. Donham, Esquire*
Jeremy Donham, Esquire
Attorney I.D. No. 206980
714 Venture Drive, Suite 144
Morgantown, WV 26508
717.881.7855 (ph) 888.370.5177 (fax)